UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

DENISE STACKHOUSE

               Plaintiff,        1:17-CV-00315-MAT

    -v-                             **DECISION AND ORDER**

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

               Defendant.
_____

## INTRODUCTION

Denise Stackhouse ("Plaintiff"), represented by counsel, brings this action under Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner" or "Defendant"), denying her application for disability insurance benefits ("DIB"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## PROCEDURAL BACKGROUND

On September 27, 2013, Plaintiff protectively filed for DIB, alleging disability beginning June 24, 2012. Administrative Transcript ("T.") 71-72. The claim was initially denied on December 19, 2013, and Plaintiff timely requested a hearing. T. 85-94. A video hearing was conducted on March 7, 2015, in Falls Church,

Virginia by administrative law judge ("ALJ") Lisa B. Martin, with Plaintiff appearing via video conference with her attorney. A vocational expert ("VE") also testified. T. 45-70. The ALJ issued an unfavorable decision on August 27, 2015. T. 17-30. Plaintiff appealed the decision to the Appeals Council ("AC"), which denied Plaintiff's request for review on February 10, 2017, making the ALJ's determination the final decision of the Commissioner. T. 1-5. This action followed.

**THE ALJ'S DECISION**

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. § 404.1520(a). Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2017. T. 22.

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 24, 2012, the alleged onset date. T. 22.

At step two, the ALJ determined that Plaintiff had the following "severe" impairments: lumbar spine disorder; essential hypertension; obesity; and asthma. *Id*.

At step three, the ALJ found that Plaintiff's impairments did not singularly or in combination meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. T. 23.

Before proceeding to step four, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), with the following additional limitations: must have an opportunity as often as every thirty minutes to briefly change positions for one or two minutes, with access to typical work breaks; no ladder, rope, or scaffold climbing, and is limited to only occasional postural motions otherwise; no exposure to dangerous work hazards, which include unprotected heights and exposed moving machinery; limited to detailed but uninvolved work activities, not requiring a fast assembly or quota pace; and no exposure to concentrated pulmonary irritants or extreme heat, humidity, or cold. T. 23.

At step four, the ALJ concluded that Plaintiff was capable of performing past relevant work as a store attendant and cashier. T. 28. In the alternative, at step five, the ALJ relied on the VE's testimony to find that there are other jobs existing in the national economy Plaintiff is also able to perform, including the representative occupations of document preparer, and final assembler, optical goods. T. 29. The ALJ accordingly found that Plaintiff was not disabled as defined in the Act. *Id.*

## SCOPE OF REVIEW

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the

decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

**DISCUSSION**

Plaintiff contends that remand of this matter is warranted for the following reasons: (1) the ALJ erred in finding Plaintiff's subjective complaints not credible; and (2) the ALJ's reliance on the VE's testimony was improper because the hypothetical question posed to the VE contained vague terms. For the reasons discussed

4

below, the Court finds Plaintiff's arguments without merit and affirms the Commissioner's final determination.

## I. The ALJ's Credibility Finding was Proper

Plaintiff first argues that the ALJ erred in her evaluation of Plaintiff's subjective complaints. Specifically, Plaintiff contends the ALJ: (1) improperly used Plaintiff's failure to seek treatment as a basis to assess her credibility without first providing her an opportunity to explain her reasons for failing to seek treatment; and (2) improperly relied upon Plaintiff's activities of daily living to diminish her credibility.

As an initial point, the Court notes that an ALJ's credibility assessment is entitled to deference. "Because the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, his decision to discredit subjective testimony is entitled to deference and may not be disturbed on review if his disability determination is supported by substantial evidence." *Hargrave v. Colvin*, No. 12-CV-6308 (MAT), 2014 WL 3572427, at *5 (W.D.N.Y. July 21, 2014) (internal quotation omitted). In this case, for the reasons set forth below, the Court finds that the ALJ's credibility assessment was reasonable and consistent with the record.

### A. Plaintiff's Failure to Seek Treatment

An ALJ is permitted to considered a claimant's failure to seek treatment for alleged disabilities when assessing credibility, so

long as he or she also "consider[s] any explanations that the individual may have provided . . . that may explain infrequent or irregular medical visits or failure to seek medical treatment." *Meadors v. Colvin*, No. 5:13-CV-0160 LEK, 2015 WL 224759, at *11 (N.D.N.Y. Jan. 15, 2015); see also *Miller v. Colvin*, 85 F. Supp. 3d 742, 755 (W.D.N.Y. 2015) ("An ALJ is permitted to considered a Plaintiff's failure to seek treatment for alleged disabilities when evaluating a Plaintiff's credibility with respect to statements of the extent of the impairments."); *Arnone v. Bowen*, 882 F.2d. 34, 39 (2d Cir. 1989)(finding claimant's failure to seek medical attention "seriously undermine[d]" contention of disability). Furthermore, rather than being required to accept a claimant's reports of pain and other limitations without question, the ALJ may "exercise discretion in weighing the credibility of the claimant's testimony in light of other evidence of the record." *Greene v. Colvin*, 936 F. Supp. 2d 216, at 226 (W.D.N.Y. 2013) (citing *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010)).

At the hearing in this case, Plaintiff testified she was five feet, seven inches tall and weighed approximately 320 pounds at her last doctor's appointment. T. 53. Plaintiff testified she has constant lower back pain, ranging from an eight to nine on a scale of one to ten. T. 54. She testified the pain is made worse by doing any activity, including walking, sitting, or standing. *Id*. She also testified to pain in her legs occurring at least four times per

6

day, described as sharp, shooting pains that can send her "right to the ground." T. 55. She rated her leg pain at "at least a nine" level and said it has caused her to fall a couple times. T. 56. Plaintiff testified that any activity can bring on the leg pain, but walking and standing and sitting all make it worse. She also testified sitting makes the numbness and tingling in her legs worse. T. 55. Plaintiff testified she was taking hydrocodone for her back and leg pain but is no longer taking it because her new doctor does not prescribe it to any of her patients. Instead, Plaintiff testified, she is currently taking muscle relaxers for her back pain and leg pain, but the medication does not help much. T. 52.

Plaintiff's medical records indicate Plaintiff received aquatic physical therapy twelve times between July and August 2012. The discharge note indicates Plaintiff continued to report high pain levels and trouble sleeping, but that she did get temporary relief for the day following therapy. T. 230. At the hearing, Plaintiff testified physical therapy had not helped her pain. T. 52.

An August 2012 MRI demonstrated small central L1-L2 disc herniation, and moderate left L4-L5 and moderate to severe bilateral L5-S1 foraminal stenosis due to facet arthropahty. T. 255. In September 2012, Plaintiff received an epidural steroid injection, which she reported did not help. T. 254, 258. At that

7

time, Plaintiff's neurologist, Dr. Douglas Moreland, explained there was no surgical intervention that he was able to offer and recommended Plaintiff see a rehabilitation specialist. He also strongly recommended that Plaintiff lose a significant amount of weight. T. 258. At the hearing, Plaintiff testified that the injections she received from Dr. Moreland did nothing for her pain. T. 52.

Plaintiff's medical records indicate very limited treatment for her back impairment after 2012. On July 7, 2014, Plaintiff was seen by her primary care physician, Dr. Brittany Morse, for her yearly checkup. Dr. Morse noted Plaintiff reported some back pain that was stable but still prevented her from doing many normal activities. Plaintiff reported she was swimming almost daily. T. 317. Plaintiff was seen by Dr. Morse in February 2015 for a blood pressure check. T. 345. In the treatment notes, Dr. Morse noted Plaintiff was resistant to exercise suggestions. T. 346. In April 2015, Dr. Morse saw Plaintiff for a lump in her breast and noted Plaintiff was applying for disability. Dr. Morse noted Plaintiff reported constant back pain, but otherwise felt generally well. Dr. Morse also noted Plaintiff had not followed through with recommendations to reduce her weight. T. 343. At the hearing, Plaintiff testified that doctors had discussed her diet with her, but she felt there was nothing she could do as far as exercise due to her pain. T. 56.

In her decision, the ALJ noted that Plaintiff's treating physician, Dr. Morse, indicated that Plaintiff's pain exceeded what Dr. Morse would expect, given the imaging evidence, which demonstrated a relatively mild impairment. *See* T. 24 (referring to T. 344). The ALJ further noted the record indicated Plaintiff was resistant to following treatment advice, was not prescribed narcotic pain relievers past her initial onset of symptoms, and had limited treatment since 2012. T. 24. The ALJ explained that Plaintiff was no longer participating in physical therapy despite reporting some immediate relief, was not taking narcotic medication because her doctor was not comfortable prescribing a narcotic, and had not lost weight, despite her primary care physician's and neurologist's strong urging to do so. T. 25.

The Court finds no error in the ALJ's consideration of Plaintiff's failure to seek treatment and to follow her physicians' recommendations. Plaintiff was given an opportunity at the hearing to provide explanations for her actions, which the ALJ ultimately found not to be credible. For example, the ALJ noted that the medical record indicated Plaintiff had received some relief from physical therapy (T. 25), despite her claim at the hearing that she had not. The ALJ further noted that Plaintiff's physical therapist had indicated that physical therapy could likely get Plaintiff back to work within eight weeks, which further contradicts Plaintiff's claim that physical therapy did not improve her condition. *Id*. The

9

ALJ also noted that Plaintiff's own treatment providers had noted that she was resistant to their recommendations. *Id*. The ALJ ultimately appropriately explained that Plaintiff's treatment was not commensurate with the type of treatment one might expect with a truly disabling impairment. *Id*. Accordingly, the ALJ complied with the requirement that she consider Plaintiff's explanation for her limited treatment. *See Whitehurst v. Berryhill*, No. 1:16-CV-01005-MAT, 2018 WL 3868721, at *6 (W.D.N.Y. Aug. 14, 2018) (finding no error in ALJ's credibility assessment where the ALJ "considered the explanations offered by Plaintiff regarding her failure to seek treatment and lack of compliance, but ultimately concluded that her actions showed an unwillingness to actively try to improve her condition"); *Price v. Colvin*, No.1:14-CV-00756(MAT), 2017 WL 2572311 at *5 (W.D.N.Y. June 14, 2017)("a claimant's failure to adhere to prescribed treatment, as well as gaps in treatment, are relevant considerations in the assessment of credibility").

**B. Plaintiff's Activities of Daily Living**

Plaintiff also argues that the ALJ erred in relying on her self-reported activities of daily living to find her less than fully credible. At the hearing, Plaintiff testified that she is unable to walk more than twenty yards without pain and numbness in her legs and pain in her back. T. 59. She testified she wakes up at least five or six times throughout the night due to her pain and

10

that she is unable to dress herself because she can't bend over to put on her pants, socks, or shoes. T. 60. Plaintiff testified she can only wash one or two dishes at a time before needing to lay down and she needs to lay down after feeding the dog. T. 61-62. Plaintiff further testified that she drives herself to the store two or three times per week. T. 63.

In her decision, the ALJ found that Plaintiff's hearing testimony regarding the nature and severity of her pain was inconsistent with her self-reported level of daily activity and interaction. Specifically, the ALJ noted Plaintiff's reports of feeding and playing fetch with her dog, retrieving mail from the mailbox, weeding the garden, and grocery shopping with her mother. T. 26. In her function report, Plaintiff stated she prepares her own meals daily, goes shopping for personal items, gifts, and groceries, is able to fold clothes, do light dusting, dishes, and a little yard work. T. 185-95. The ALJ explained that these activities were inconsistent with the functional limitations Plaintiff claimed. T. 26.

The Court finds no error in the ALJ's consideration of Plaintiff's activities of daily living. "An ALJ is entitled to take a plaintiff's activities of daily living into account in making a credibility determination." *Pennock v. Comm'r of Soc. Sec.*, 7:14-CV-1524 (GTS/WBC), 2016 WL 1128126, at *5 (N.D.N.Y. Feb. 23, 2016), *report and recommendation adopted*, 2016 WL 1122065 (N.D.N.Y.

Mar. 22, 2016). "The issue is not whether Plaintiff's limited ability to undertake normal daily activities demonstrates her ability to work. Rather, the issue is whether the ALJ properly discounted [Plaintiff's] testimony regarding her symptoms to the extent that it is inconsistent with other evidence." *Morris v. Comm'r of Soc. Sec.*, 5:12-cv-1795 (MAD/CFH), 2014 WL 1451996, at *8 (N.D.N.Y. Apr. 14, 2014). In this case, the ALJ properly found that Plaintiff's activities of daily living were inconsistent with the severe limitations she claimed at the hearing. This determination was within the ALJ's discretion and supported by the record. Moreover, the ALJ had ample other reasons to find Plaintiff less than fully credible, including her failure to follow her physicians' treatment recommendations, as discussed above, and the inconsistency between the objective evidence and Plaintiff's statements, which was noted by Plaintiff's own physician. Under these circumstances, the Court finds the ALJ did not give undue weight to Plaintiff's ability to perform certain activities of daily living, and accordingly finds no basis for remand.

**II. The ALJ Properly Relied on the Vocational Expert's Testimony**

Plaintiff's second and final argument is that language in the ALJ's hypothetical question posed to the VE at the hearing was too vague for the VE to reliably give an opinion. Specifically, Plaintiff argues the phrase "detailed but uninvolved work activities," which was included in the final RFC finding, was

impermissibly vague. For the reasons set forth below, the Court finds no merit to this argument.

At step five of the sequential analysis, the ALJ must determine whether there are significant numbers in the national economy which the claimant is capable of performing. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The ALJ may make this determination by relying on a VE's testimony regarding a hypothetical, so long as "there is substantial record evidence to support the assumption[s] upon which the [VE] based [his or her] opinion . . . and accurately reflect the limitations and capabilities of the claimant involved." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (internal citations omitted).

Here, the ALJ presented the VE with a hypothetical which the ALJ based upon Plaintiff's symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. Specifically, the ALJ's hypothetical included the following limitation, among others: "because of pain that would [cause] some minor distraction, [the hypothetical individual was] limited to detailed but uninvolved work activities not requiring a fast percent or quota pace." T. 67. Contrary to Plaintiff's argument, the Court finds the words "detailed but uninvolved work activity" to be adequately clear in meaning, when read in full context. The Court notes that Plaintiff's argument omits both the prefatory

13

phrase "because of pain that would [cause] some minor distraction" and the explanatory phrase "not requiring a fast percent or quota pace," which the ALJ used to further clarify what "detailed but uninvolved work activity" meant. This additional context demonstrates that "uninvolved," in this context, referred to the level of attention required to complete a task.

Significantly, the VE did not indicate he needed any clarification of the ALJ's factual premise before answering the question presented, which further supports the conclusion that the ALJ's explanation was clear in context. *See* T. 67. A VE's ability to answer a hypothetical without additional clarification is evidence that the hypothetical was not inappropriately vague. *See Slattery v. Colvin*, 111 F. Supp. 3d 360, 376 (W.D.N.Y. 2015) (rejecting claim that hypothetical was vague where the VE "understood the question and did not need clarification"); *see also Thompson v. Astrue*, No. 12-CV-111S, 2013 WL 265239, at *5 (W.D.N.Y. Jan. 23, 2013) (rejecting plaintiff's claim the RFC finding was unsupported by substantial evidence because of a vague hypothetical question posed to the VE).

Finally, the Court notes that Plaintiff's attorney had the opportunity to question the VE about the language used in the hypothetical, but did not. *See* T. 69. This failure to contemporaneously question the ALJ's phrasing further confirms that the hypothetical was clear in context. Accordingly, the Court finds

14

no merit to Plaintiff's argument the ALJ's language in the hypothetical question was vague. The Court thus further finds remand of this matter is not warranted on this basis.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Docket No. 9) is denied and the Commissioner's motion for judgment on the pleadings (Docket No. 13) is granted. Plaintiff's complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                              **S/Michael A. Telesca**

                              _____
                              HONORABLE MICHAEL A. TELESCA
                              United States District Judge

Dated:    September 10, 2018
            Rochester, New York